IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

SCOTT A. WINDOM,

       Plaintiff,

v.                         Civ. Action No. 1:19-cv-24
                               (Judge Kleeh)

JASON S. HARSHBARGER,

       Defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]

Pending before the Court is a Motion to Dismiss Plaintiff's First Amended Complaint, filed by Defendant Jason Harshbarger. It has been fully briefed and is ripe for review. On April 24, 2019, the Court held a hearing on the Motion. For the reasons discussed below, the Court **DENIES** the Motion [ECF No. 13].

## I.   PROCEDURAL HISTORY

The Plaintiff, Scott A. Windom ("Windom"), filed this action in the Circuit Court of Ritchie County, West Virginia, on or about January 24, 2019, alleging that the Defendant, Jason S. Harshbarger ("Harshbarger"), violated his rights under the First Amendment of the United States Constitution and Article III, Section 7, of the West Virginia Constitution. The matter was removed to this Court on February 15, 2019. ECF No. 1.

On February 15, 2019, Windom filed a Motion for Preliminary

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

Injunction, which was later withdrawn. ECF Nos. 2, 8, 9. Harshbarger moved to dismiss the complaint. ECF No. 5. On March 14, 2019, Windom filed a First Amended Complaint. ECF Nos. 11, 12. On March 28, 2019, Harshbarger filed a Motion to Dismiss the First Amended Complaint. ECF No. 13. This Motion is now ripe for review and is the subject of this order.

## II.  FACTUAL BACKGROUND

The facts as stated here appear as they do in the First Amended Complaint. ECF No. 11. For purposes of the pending motion, they are regarded as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Harshbarger represents the 7th District (Ritchie and Pleasants Counties) in the West Virginia House of Delegates. Am. Compl. at ¶ 7. He has a Facebook page entitled "Delegate Jason S. Harshbarger." ¶ 8. A "significant amount of speech" posted on Harshbarger's page is by, to, or about the government. ¶ 9. Harshbarger's page was created in 2016, and he uses it to engage with his constituents about legislation, public policy, his campaign and endorsements, and other topics. ¶ 18. Windom states that the page is an "important source of news and information about State government" for its followers. Id.

Windom writes that Harshbarger presents his account as one that operates in his "official," not "personal," capacity. ¶ 19. It is accessible to the public. ¶ 20. Harshbarger has the exclusive

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

power to operate the page because he is a member of the House of Delegates.[1] ¶ 21. Windom also writes that Harshbarger operates his page as part of his duties as a delegate. ¶¶ 21, 26.

During the 2018 legislative session, Windom commented on the Jason S. Harshbarger page and was subsequently blocked from accessing the page. ¶ 22. Windom's comments relayed his opposition to a "co-tenancy" bill that Harshbarger supported. Id. Harshbarger also deleted the comments. Id. Windom avers that by encouraging, soliciting, and allowing public comments/discussion on his page, Harshbarger created a limited public forum. ¶¶ 29–30. Thereafter, by blocking Windom and deleting Windom's comments, Harshbarger imposed a viewpoint-based restriction of speech in violation of the First Amendment. ¶ 31. Windom alleges that Harshbarger did this without notice and without providing an opportunity for appeal, in violation of Windom's rights under the Fourteenth Amendment's Due Process Clause. ¶¶ 40, 44.

Windom alleges the following causes of action: (1) Violation of the First Amendment of the United States Constitution and Article III, § 7, of the Constitution of West Virginia; (2) Violation of the Fourteenth Amendment of the United States

---

[1] The Facebook page at issue was neither established by the West Virginia House of Delegates nor, based on the record before the Court, operated by any employee of the House.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

Constitution and Article III, § 10, of the Constitution of West Virginia; (3) Declaratory Relief (U.S.C. § 2201); and (4) Preliminary and Permanent Injunctive Relief.[2]

Windom clarified during the April 24, 2019, hearing that he brings this action under 42 U.S.C. § 1983. Windom seeks the following relief: a declaratory judgment confirming (1) Windom's rights under the First Amendment to participate in Facebook discussions on Harshbarger's "Delegate Jason S. Harshbarger" Facebook page, and (2) that Harshbarger's blocking Windom from the page deprived Windom of his rights; a declaration that the viewpoint-based exclusion of Windom violates the First and Fourteenth Amendments to the U.S. Constitution; an order directing Harshbarger to restore Windom's access to comment on the page; injunctive relief to coercively protect Windom's Constitutional rights from Harshbarger's interference; costs, including reasonable attorney's fees; and other and further relief that the Court finds just and proper.

### III. <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows

---

[2] Windom notes in the First Amended Complaint that Harshbarger has deactivated his "Delegate Jason S. Harshbarger" page, but Windom reserves the right to file a motion for a preliminary injunction if Harshbarger activates his page and blocks Windom during the pendency of this litigation.

a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson, 551 U.S. at 94). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). All reasonable inferences that can be drawn from the pleading are taken in favor of the plaintiff. Lukosus v. First Tenn. Bank Nat'l Ass'n, No. 03-1993, 2004 WL 500977, at *1 (4th Cir. 2004).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

## IV.   GOVERNING LAW

### A.   Public Forums & Viewpoint Based Restrictions

The Supreme Court has adopted forum analysis as the means of analyzing restrictions placed on private speech that occurs on government property or on private property for government use. Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998); Sons of Confederate Veterans, Inc. v. Comm'r of Va. Dep't of Motor Vehicles, 288 F.3d 610, 622 (4th Cir. 2002); Cornelius, 473 U.S. at 801. The three recognized types of forums are the traditional public forum, the designated/limited public forum, and the nonpublic forum. Forbes, 523 U.S. at 677. First, traditional public forums are places like streets and parks "which by long tradition or by government fiat have been devoted to assembly and debate." Perry Educ. Ass'n, 460 U.S. at 45. A nonpublic forum, on the other hand, is "not by tradition or designation a forum for public communication." Id. at 677.

Last, a "limited" or "designated" public forum[3] is one the government has opened for expressive activity to the public or some segment of the public. Warren, 196 F.3d at 193 (citing Forbes, 523 U.S. at 677). A designated public forum can only be created by "purposeful government action" in which "the government must

---

[3] Traditional and limited public forums are interchangeable terms.

intend to make the property 'generally available.'" <u>Forbes</u>, 523 U.S. at 678. If the government "excludes a speaker who falls within the class to which a designated public forum is made generally available, its action is subject to strict scrutiny." <u>Forbes</u>, 523 U.S. at 677. In a limited public forum, the government "is not required to and does not allow persons to engage in every type of speech." <u>Good News Club</u>, 533 U.S. at 106. The government may "reserve [its forum] for certain groups or for the discussion of certain topics." <u>Id.</u> Viewpoint-based restrictions of speech target not the subject matter of speech but the particular views taken by the speaker on a subject. <u>Davison</u>, 912 F.3d at 687. This type of discrimination is prohibited in all forums. <u>Rosenberger v. Rector and Visitors of Univ. of Va.</u>, 515 U.S. 819, 828 (1995).

**B.    Acting Under Color of State Law**

A Section 1983 claim has two parts: it is a (1) violation of a constitutional right (2) by someone acting under color of state law. A defendant acts under color of state law when he "exercise[s] power possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." <u>Davison</u>, 912 F.3d at 679. Section 1983 claims also include private actions which have a "sufficiently close nexus" with the State to be "fairly treated as that of the State itself." <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003). In determining whether

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

a private party's allegedly unconstitutional conduct is fairly attributable to the State, the court first identifies the specific conduct of which the plaintiff complains. <u>Mentavlos v. Anderson</u>, 249 F.3d 301, 311 (4th Cir. 2001). The court then evaluates whether that conduct may reasonably be treated as that of the state itself. <u>Rossignol</u>, 316 F.3d at 523. There is no specific formula to apply when determining whether an official acted under color of state law; courts look to the totality of the circumstances. <u>Holly v. Scott</u>, 434 F.3d 287, 292 (4th Cir. 2006).

"[I]f a defendant's purportedly private actions are linked to events which rose out of his official status, the nexus between the two can play a role in establishing that he acted under color of state law." <u>Rossignol</u>, 316 F.3d at 524. Also, "where the sole intention of a public official is to suppress speech critical of his conduct or official duties or fitness for public office, his actions are more fairly attributable to the state." <u>Id.</u>

**C.    Government Officials' Social Media Pages as Public Forums**

The United States Court of Appeals for the Fourth Circuit is one of only a few federal courts, and the only Circuit Court, in the nation that have considered whether a government official's social media page constitutes a public forum.[4] <u>See</u> <u>Davison v.</u>

---

[4] Two district courts in the United States have reached conflicting results: <u>Morgan v. Bevin</u>, 298 F.Supp.3d 1003 (E.D. Ky. 2018)

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

Randall, 912 F.3d 666, 681 n.3 (4th Cir. 2019).

In Davison, Phyllis Randall ("Randall"), Chair of the Loudoun County, Virginia, Board of Supervisors, was sued for deleting the Plaintiff, Brian Davison ("Davison"), from her "Chair Phillis J. Randall" Facebook page. Id. at 672–73. Randall designated this page as a "governmental official" page. Id. at 673. She also had a campaign page, which she classified as a campaign page belonging to a politician, and a personal profile. Id.

On her campaign page, Randall encouraged everyone who wanted to participate in "back and forth conversations" to do so on her official page. Id. at 673. Randall also used her official page to notify the public about Board meetings, significant public safety issues, weather issues, official actions taken by the Loudoun Board, and more. Id. at 680. The official page "principally addressed her official responsibilities." Id. at 674. Members of the public interacted by leaving "likes," comments, or criticisms on the official page. Id. Sometimes, Randall responded to them. Id. Randall advertised her official page in her official "Chair

---

(holding that the First Amendment forum analysis did not apply to restrictions on speech on the official Facebook and Twitter pages of the Governor of Kentucky); Knight First Amend. Inst. at Colum. Univ. v. Trump, 302 F.Supp.3d 541 (S.D.N.Y. 2018) (holding that the *interactive component* of the President's Twitter account, as opposed to the President's tweets themselves, constituted a designated public forum).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

Phyllis J. Randall" newsletter, which is prepared by county employees, hosted on the county website, and distributed via the county email account. Id. at 675.

Davison, a civically-engaged citizen of Loudoun County, attended a Loudoun town hall meeting that included the School Board and Randall. Id. At the meeting, he submitted a question implying that certain School Board members had acted unethically in approving financial transactions. Id. Randall answered the question but called it a "set up question." Id. Davison then tweeted at her about the comment. Id. He also commented about the meeting on one of Randall's Facebook posts on her official page. Id. Randall testified that Davison's comment on her page included accusations regarding "kick back money," and she deleted his comment, along with her own original post. Id. She also blocked Davison's account from accessing her the page. Id. Twelve hours later, she unblocked him. Id. at 676.

Davison sought declaratory and injunctive relief under § 1983, alleging that the banning of his commenting on Randall's official page — a limited public forum — was viewpoint discrimination. Id. At the summary judgment stage, the district court concluded that Davison's evidence established a material dispute of fact as to whether the Chair's Facebook Page amounted to a limited public forum and whether Randall acted under color of

state law in banning him from the official page. Id. After a one-day bench trial, the district court awarded judgment in Davison's favor. Id at 676–67.

The Fourth Circuit, on appeal, addressed standing even though it was not challenged below. Id. at 677. The only disputed part of the three-prong test was "injury in fact." Id. The court noted that standing requirements are relaxed in First Amendment cases. Id. at 678. Davison intended to continue to engage in a course of conduct "arguably" impacted by the challenged conduct. Id. at 678. And, the court found, there was a credible threat of Randall's banning/deleting continuing. Id. at 679. Injury in fact and, therefore, standing were satisfied. Id.

In determining whether Randall acted "under color of state law," the court wrote that this requirement is satisfied when the challenged actions are "linked to events which arose out of [her] official status." Id. at 680. The court noted that Randall created the page to further her duties as a municipal official (it was a "tool of governance"). Id. The court cited the following factors that weighed in favor of finding that she acted under color of state law:

> Also weighing in favor of finding state action
> here are Defendant's efforts to swathe the
> "Chair Phyllis J. Randall" Facebook page in
> the trappings of her office. Among other

> things, (1) the title of the page includes
> Defendant's title; (2) the page is categorized
> as that of a government official; (3) the page
> lists as contact information Defendant's
> official County email address and the
> telephone number of Defendant's County office;
> (4) the page includes the web address of
> Defendant's official County website; (5) many
> — perhaps most — of the posts are expressly
> addressed to "Loudoun," Defendant's
> constituents; (6) Defendant has submitted
> posts on behalf of the Loudoun County Board of
> Supervisors as a whole; (7) Defendant has
> asked her constituents to use the page as a
> channel for "back and forth constituent
> conversations"; and (8) the content posted has
> a strong tendency toward matters related to
> Defendant's office.

Id. at 680-81. It also wrote that a private citizen could not have created and used the page in the same manner. Id. at 681.

Finally, the court upheld the district court's finding that the interactive portion of Randall's Page was a public forum. Id. at 688. The court refrained from deciding whether the forum was a traditional public forum or a limited public forum because the discrimination that took place was viewpoint discrimination, which is prohibited in all forums. Id. at 687. The court wrote that Randall "intentionally open[ed the public comment section of the Chair's Facebook Page] for public discourse" and invited "ANY Loudoun citizen" to make posts on the page — the interactive component on the page — "on ANY issues, request, criticism,

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

complement, or just your thoughts." Id. at 682. The court rejected Randall's arguments that (1) the official page was a private website and, therefore, not public property susceptible to forum analysis, and (2) the page was government speech. Id. Private property, such as Facebook, dedicated to public use can constitute a public forum. Id. at 683. The court also distinguished between Randall's speech itself and the *interactive space*, ultimately upholding the district court and finding that Randall violated Davison's First Amendment rights. Id. at 687–88.

## V.   ANALYSIS

Taking all of the facts in Windom's Amended Complaint as true, he has stated a claim upon which relief may be granted.[5] First, like in Randall, Windom has established standing. The Fourth Circuit noted in Randall that standing requirements are relaxed in First Amendment cases. There is a credible threat of Harshbarger's continued banning of users or deleting of comments; thus, the injury in fact requirement is satisfied. The Court will now examine whether Windom has sufficiently pled that Harshbarger violated his constitutional rights by deleting Windom's comments on and

---

[5] Windom's Amended Complaint largely tracks the Fourth Circuit's analysis in Randall — certainly closely enough to satisfy the 12(b)(6) threshold presented by Harshbarger's motion. Discovery will presumably ferret out whether Windom's Amended Complaint is supported by evidence or simply an example of well-done strategic pleading.

blocking Windom on Facebook.

## A.    Public Forum Analysis

Taking Windom's factual allegations as true, he has successfully pled that Harshbarger opened up his Facebook page as a public forum for expressive activity. Windom avers that "Harshbarger encouraged, solicited and allowed public comments and discussions between him, in his official capacity, and his constituents on the official page for Delegate Harshbarger." This is similar to the way Randall opened up her page's public comment section for discourse. Private property — such as a Facebook page — can constitute a public forum based on its purpose and use. Social media, including Facebook, could be considered the modern-day public square, particularly during campaigns, election seasons, or, as here, legislative sessions. Ironically, this could be most true in a state like West Virginia, where the state legislature convenes only for a 60-day regular session in Charleston, which, for many constituents across the state, can present a lengthy and difficult journey for the possible chance to interact with their representatives. Social media outlets such as Harshbarger's Facebook page can serve as a much more convenient meeting "place" for constituents and representatives to discuss issues important to their districts. The manner in which the forum is established and used, as discussed above, will determine whether

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

constituent interactions are cloaked in First Amendment protections.

Windom alleges that his being banned and the deleting of his comments were acts of viewpoint discrimination because his posts voiced opposition to the "co-tenancy" bill that Harshbarger supported. The reasonable inference to be drawn, particularly at this stage of proceedings, is that Harshbarger deleted Windom's comments *because* Windom disagreed with him. Viewpoint discrimination is prohibited in all forums. Therefore, if Windom's claims are taken as true, he has sufficiently pled a violation of his constitutional rights. Importantly, a designated public forum can only be created by "purposeful government action."

**B.  Harshbarger's Acting Under Color of State Law**

It is crucial that Windom properly allege that Harshbarger acted under color of state law when he blocked Windom from Harshbarger's Facebook page and deleted Windom's comments. Counsel for Harshbarger conceded at the hearing that this was the lone issue to resolve at this stage: whether Windom has sufficiently pled that Harshbarger was acting under color of state law when taking these actions.

As the Fourth Circuit wrote in <u>Randall</u>, an individual acts under color of state law when the challenged actions are "linked to events which arose out of [his] official status." <u>Randall</u>, 912

15

F.3d at 680. In finding that Randall acted under color of state
law, the court noted that Randall used her official page to further
her duties as an elected official (i.e., it was a "tool of
governance). Id. The court listed a number of factors that weighed
in favor of finding that she acted under color of state law, but
these factors are not dispositive. Here, this Court examines each
one in turn with respect to Harshbarger's page.

First, Harshbarger's page is similar to Randall's in that the
title of each page reflected the elected official's position.
Randal's page was entitled "Chair Phyllis J. Randall."
Harshbarger's page was entitled "Delegate Jason S. Harshbarger."
Second, unlike Randall's page, Harshbarger's page was categorized
as a "Politician" page. This differs from Randall's page, which
was categorized as that of a public official.

Third, Harshbarger listed a private email address and phone
number on his page, not official ones. This differs from Randall's
page, on which she listed her official county email address and
phone number. Fourth, the Amended Complaint does not indicate that
Harshbarger's page included the web address of Harshbarger's
official website. This also differs from Randall's page, which
included the county's official website. Fifth, the Randall court
noted that many of her posts were expressly addressed to "Loudoun,"
her constituents. Here, it is not clear to whom Harshbarger

addressed his posts. Windom avers that Harshbarger "has used the account to engage with his constituents, followers and the public"; that he "encouraged, solicited and allowed public comments" between him and his constituents; and that his page is "an important source of information" about legislation. It is unclear what proportion of his activity on his page is dedicated to this.

Sixth, Randall submitted posts on behalf of the Loudoun County Board of Supervisors as a whole. Here, the Amended Complaint contains no indication that Harshbarger submitted posts on behalf of the House of Delegates as a whole. Seventh, Randall asked her constituents to use the page as a channel for "back and forth constituent conversations." Here, Windom alleges that Harshbarger "encouraged, solicited and allowed public comments" between him and his constituents, so this factor weighs in favor of the same finding. Eighth, the content posted on Randall's page "ha[d] a strong tendency toward matters relating to [her] office." Windom alleges the same thing here, writing that "a significant amount of speech posted on Delegate Harshbarger's page is by, to or about the government, specifically the West Virginia House of Delegates."

Thus, considering the factors listed by the Fourth Circuit, overall, they weigh slightly against a finding under <u>Randall</u> that Harshbarger acted under color of state law. Even so, given the

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

holding in Randall and the fact that Randall was an appellate decision after a bench trial and a denial of summary judgment, this Court finds it premature to dismiss this suit. Taking the Amended Complaint as true, Harshbarger's conduct as a delegate, even if private, could bear a sufficiently close nexus with the State to be fairly treated as that of the State itself. See Rossignol, 316 F.3d at 523. If his actions were linked to events that rose out of his official status, the nexus between the two can play a role in establishing that he acted under color of state law. See id. at 524. Finally, if a public official's sole intention is to suppress speech critical of his conduct or official duties or fitness for public office, his actions are more fairly attributable to the state. See id.

Given the stage of proceedings, Windom's allegations (which must be taken as true), and the burden Harshbarger faces under Rule 12(b)(6), this Court cannot conclude that dismissal is proper on this question. The Court presumes it will again be presented the opportunity to evaluate whether Harshbarger's conduct may reasonably be treated as that of the State itself. See id. at 523. Until then, discovery will provide useful insight as to how, if, when, and why Harshbarger used his page and possibly prevented others from doing so. At this stage, the Court finds that by taking Windom's factual allegations and reasonable inferences drawn

18

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 13]**

therefrom as true, Windom has raised his right to relief above a speculative level, and, thus, the Motion to Dismiss must be denied.

## VI. <u>CONCLUSION</u>

For the reasons stated above, Harshbarger's Motion to Dismiss the Amended Complaint is **DENIED** [ECF No. 13]. The Motion to Dismiss the original complaint is **DENIED AS MOOT** [ECF No. 5]. A Scheduling Order will be issued by the Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: June 6, 2019

_Tom S Kleeh_
_____
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE